[Cite as *Inner City Living, Inc. v. Dept. of Dev. Disabilities*, 2017-Ohio-8317.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105255**

---

# INNER CITY LIVING, INC.

### PLAINTIFF-APPELLANT

vs.

# OHIO DEPARTMENT OF DEVELOPMENTAL DISABILITIES

### DEFENDANT-APPELLEE

---

## JUDGMENT:
AFFIRMED

---

Administrative Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-853695

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** October 26, 2017

**ATTORNEYS FOR APPELLANT**

Jeffrey J. Jurca
Sean P. Casey
Jurca & Lashuk
240 North Fifth Street, Suite 330
Columbus, Ohio   43215


**ATTORNEYS FOR APPELLEE**

Michael DeWine
Ohio Attorney General

Roger F. Carroll
Katherine J. Bockbrader
Assistant Attorneys General
30 East Broad Street, 26th Floor
Columbus, Ohio   43215

SEAN C. GALLAGHER, J.:

{¶1}   Inner City Living, Inc. appeals the trial court's decision affirming the Ohio Department of Developmental Disabilities' ("DODD") revocation of Inner City Living's certification to provide services to developmentally disabled individuals.   We affirm.

{¶2} In May 2014, DODD conducted a compliance review, as required for Inner City Living to maintain its state-mandated certification.   During that review, DODD issued three "immediate citations" for conditions that represented an immediate risk to an individual's health, safety, and welfare.   Two of Inner City Living's employees did not have the required first-aid or cardiopulmonary resuscitation ("CPR") training; a company vehicle that was used for transporting clients was unacceptably damaged (the driver-side mirror was held in place with a paper towel); and Inner City Living had failed to conduct required background checks for three staff members before hiring them, one of whom had worked at the company for almost a year.   In addition, and as provided in the compliance review summary that followed the onsite visit, Inner City Living was cited for 34 violations, which included (1) the failure to provide and implement individual service plans for two clients, (2) the failure to document nonmedical transportation, (3) the failure to comply with several requirements regarding "unusual incidents," (4) the failure to conduct a myriad of background checks before hiring staff, (5) the lack of documentation regarding necessary staff training, (6) the failure to complete a driver's abstract for staff members transporting clients, and (7) the failure to meet inspection and service

requirements for vehicles used for nonmedical transportation. None of the citations were appealed despite the opportunity. Ohio Adm.Code 5123:2-2-04(D)(2).

{¶3} In light of the citations, Inner City Living's certification was suspended. Inner City Living could no longer take any new clients but could continue providing services to existing ones. That suspension was also not appealed.

{¶4} Inner City Living had two weeks to prepare and submit a plan of correction ("POC") to address the 34 citations. Under Ohio Adm.Code 5123:2-2-04(D)(2), a provider has 14 days from receipt of a compliance review summary that includes citations to submit a written appeal or a written POC for each citation. A POC demonstrates the steps the provider will take to correct the citation and create a system to prevent reoccurrence. Inner City Living was unable to submit an acceptable POC within 14 days; however, DODD provided it with a two-month extension and technical assistance to complete the requirement. By the end of July 2014, Inner City Living's several attempts to produce an acceptable POC were rejected and DODD began the process to revoke Inner City Living's certification by issuing formal notice according to the "Compliance Review Protocol," an internal guide for DODD employees regarding the compliance review procedures. Inner City Living appealed the proposed revocation and requested an administrative hearing, which was scheduled for the beginning of August 2014.

{¶5} Despite the notice of revocation and hearing, DODD provided Inner City Living with another opportunity to comply with the health and safety requirements. *See* Ohio Adm.Code 5123:2-2-04(D)(2)(b). In October, DODD followed up with an

unannounced visit to Inner City Living's offices. During that visit, two more violations were discovered. Inner City Living had not maintained sufficient documentation for nonmedical transportation, and two staff members had not undergone the mandatory drug tests required of all employees who transport clients. Because of the two new citations and the failure to appeal those citations, Inner City Living was required to prepare a second POC. *Id.*

{¶6} At the end of October 2014, and despite the pending revocation notice, DODD approved both a newly submitted POC for the 34 citations issued in May and a POC for the two new violations discovered earlier in October. As part of the approval process, DODD was set to conduct a compliance verification visit to confirm the provider's implementation of the remedial plan.

{¶7} In early December, during the compliance verification, DODD cleared the two violations from October, but 13 of the 34 citations from May were found to be ongoing. Inner City Living was providing services to clients that did not match the client's individual service plan, failed to maintain the appropriate incident logs, failed to conduct background checks before hiring new employees — including verifications through the "Abuser" and "Nurse Aid" registries, and failed to produce documentation demonstrating that some staff members had received mandatory first-aid training. In addition, DODD found new violations, two of which were of immediate concern. Inner City Living hired a new employee who had six or more points on his driver's license but was nonetheless permitted to transport clients, and Inner City Living was performing the

wrong background checks with the Bureau of Criminal Investigation. Inner City Living used the incorrect coding so that the background check was not pulling all the required information that must be reviewed before new employees can be legally hired.

{¶8} In light of Inner City Living's failure to ensure corrections were made and the additional violations that were found during each follow-up visit, DODD proceeded with the revocation of Inner City Living's certification, although an amended notice of revocation was issued in March 2015 to include the newer violations. The hearing proceeded, and DODD found that Inner City Living's certification should be revoked based on the violations. Inner City Living filed an unsuccessful appeal under R.C. 119.12 to the Common Pleas Court of Cuyahoga County challenging DODD's decision.

{¶9} In this appeal, Inner City Living contends that the trial court abused its discretion in affirming the administrative action. We find no merit to Inner City Living's arguments.

{¶10} "Under R.C. 119.12, when a decision of a state board is appealed, a court of common pleas must decide whether the board's order was 'supported by reliable, probative, and substantial evidence and is in accordance with law.'" *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14, quoting R.C. 119.12. "The court of appeals is even more limited in its review and can overturn findings of fact 'only if the trial court has abused its discretion.'" *Id.*, quoting *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992), and *Lorain Cty. Bd. of Edn. v. State Emp. Relations Bd.*, 40

Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988). A court of appeals, however, reviews questions of law under the de novo standard of review. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, ¶ 43.

{¶11} In the first assignment of error, Inner City Living claims the "trial court erred in failing to find that Appellee did not give Appellant notice of the law or rule directly involved as required by R.C. 119.07."

{¶12} R.C. 119.07, in part, provides that an agency must provide notice that includes the charges or other reasons for the proposed action and the law directly involved. Generally, providing the relevant statutory sections upon which the administrative action is being considered is sufficient. *Richmond v. Ohio Bd. of Nursing*, 10th Dist. Franklin No. 12AP-328, 2013-Ohio-110, ¶ 11. Issues can arise, however, if the notice is overly specific. In *Simic v. Accountancy Bd. of Ohio*, 2014-Ohio-3237, 15 N.E.3d 1247, ¶ 16 (8th Dist.), for example, it was concluded that under R.C. 119.07, the board's notice of intent to take a proposed action under one specific subdivision of a statute, with accompanying factual allegations, did not provide notice of an intent to pursue the proposed action on a separate, undelineated subdivision that required a different factual predicate. *Id.* at ¶ 17. The Accountancy Board of Ohio had provided notice that it intended to take disciplinary action against an accounting firm for violation of R.C. 4701.16(A)(11), which penalizes the firm for the failure to timely renew the firm's registration. *Id.* At the hearing, however, the board penalized the accountant individually under R.C. 4701.16(A)(3) for engaging in unlicensed practice after the firm's

registration renewal had been denied without a hearing, which was in contravention of the statutory requirement. *Id.* It was therefore concluded that notice for the proposed action was lacking; the accountant had not been provided notice that a sanction would be imposed against him for operating without a license. *Id.*

{¶13} In this case, DODD's notice of revocation complied with R.C. 119.07. The revocation notice included a statement that DODD intended to revoke Inner City Living's certificate under R.C. 5123.166(B) because of the numerous violations found between May and December 2014. According to Inner City Living, listing all potential reasons supporting a revocation was not sufficient under R.C. 119.07 because DODD was required to determine which subdivisions of R.C. 5123.166(B) were actually violated by Inner City Living's conduct in the notice.

{¶14} We decline to create such a nonsensical requirement — the agency is not required to predetermine which section of the statute applies based on the alleged facts. DODD provided Inner City Living with the specific violations that it intended to pursue along with a lengthy factual recitation upon which the allegations were based. According to an unambiguously drafted notice, DODD intended to demonstrate that the revocation of Inner City Living's certification was warranted under any of the enumerated provisions of R.C. 5123.166(B)(1)-(9), which provides in part that the provider's certificate may be revoked for good cause. Subdivisions (B)(1)-(9) provide a nonexhaustive list of what is considered to be "good cause," including any other conduct the director determines is or would be injurious to individuals who receive supported

living from the provider. That the decision was based on less than all of the R.C. 5123.166(B) categories is irrelevant; Inner City Living still had notice that DODD intended to take action for that which was proven. The first assignment of error is overruled.

{¶15} In the second, third, and fourth assignments of error, Inner City Living contends (1) that DODD did not follow its protocol delineated in the "Compliance Review Protocol" document, which provided that DODD would conduct up to three compliance checks after accepting a POC; (2) that the revocation was improper because none of the violations actually caused any harm to any developmentally disabled individual (Inner City Living maintains that the violations "amounted to nothing more than clerical errors"); and (3) that DODD deprived Inner City Living of due process by not producing an internal "basic work flow" document that described the revocation process once DODD decided to pursue revocation. None of these three assignments of error complied with App.R. 16(A)(7). At a minimum, an appellant's brief must include an argument supported by legal authority. App.R. 16(A)(7).

{¶16} Inner City Living has not provided citation to authority demonstrating that strict compliance with internal protocols generally describing the procedure, as opposed to rules promulgated under the Revised Code or Administrative Code, precludes DODD from taking administrative action. App.R. 16(A)(7). It is not an appellate court's responsibility to find and articulate legal authority to support an appellant's assigned error. *Id.* Further, even if we reviewed the factual underpinnings of the unsupported

argument, Inner City Living ignores the fact that the revocation notice was originally issued in July 2014, under the process set forth in the "Compliance Review Protocol" document and based on Inner City Living's inability to timely submit an acceptable POC for the May citations. The protocols that Inner City Living is relying on did not address the particular circumstances of its case, in which DODD provided Inner City Living with a second chance to submit the belated POC after the revocation proceedings had been initiated; the document simply described a general procedure.

{¶17} Inner City Living also believes that DODD's decision — that the unresolved violations created a substantial risk to the health and safety of consumers — was not based on substantial, reliable, or probative evidence because the violations were "clerical errors." This characterization is, at best, disingenuous. Inner City Living was cited for, among other things, failing to timely conduct proper background checks of prospective employees, failing to properly maintain vehicles used for transporting clients, failing to ensure that employees had the required first-aid training, and failing to conduct drug screening of employees who transported clients. These violations went beyond "mere clerical" errors, and in addition, every visit yielded new violations, demonstrating that Inner City Living was failing to maintain even a rudimentary level of compliance with its certification requirements.

{¶18} Inner City Living is asking us to disregard the trial court's conclusion that the administrative decision was based on reliable, substantive, and probative evidence. There has been no demonstration or even an argument that the trial court abused its

discretion in making that determination. *Spitznagel*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, at ¶ 14. It must be recognized that Inner City Living is not contesting the underlying violations that were the basis of the revocation under R.C. 5123.166. *See Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 573, 589 N.E.2d 1303 (1992). DODD may revoke a provider's certification regardless of whether some or all of the deficiencies enumerated in the citations are corrected at the time of the revocation hearing. Ohio Adm.Code 5123:2-2-04(F)(5). In light of the facts that the violations were not challenged, that Inner City Living failed to appeal the citations under Ohio Adm.Code 5123:2-2-04(D)(2), and that numerous violations remained outstanding several months after being discovered, DODD's decision to revoke Inner City Living's certification under R.C. 5123.166(B) was supported by reliable, probative, and substantial evidence. *Id.*

{¶19} With respect to the "basic work flow" document, Inner City Living contends that the failure to timely produce the document deprived Inner City Living of due process under the Ohio and United States Constitutions. According to Inner City Living, "nothing could be more important to the preservation of a fair hearing than to allow Appellant access to the document for the purposes of cross-examining [the witness] regarding the validity" of her testimony that DODD proceeded with the July revocation based on the "basic work flow" document. In its reply brief, however, Inner City Living agrees that the revocation provisions "set forth in the [basic work flow] documents were not even at issue" at the time DODD issued the notice of revocation. Essentially, Inner

City Living's argument is that the "basic work flow" document was irrelevant to DODD's decision to revoke the certification in July 2014 because DODD's decision to accept the POCs in October meant that DODD should have adhered to its published, internal protocol of conducting three compliance visits.

{¶20} This is precisely what the hearing officer concluded:

The ["basic work flow"] document sought is an internal policy, not published, and [it] is immaterial at this point as to whether or not DODD followed its own rules. The testimony by [DODD's employee] established that DODD did not follow the published "COMPLIANCE REVIEW PROTOCOL" [indicating DODD would conduct three verification visits after accepting a POC] and she explained why not. Hence for purposes of this case the fact that DODD did not follow the "COMPLIANCE REVIEW PROTOCOL" and the reason for doing so have been clearly established. The question now becomes did DODD have to follow the published protocol and since it did not what are the consequences?

It was immaterial whether the "basic work flow" document authorized DODD's action because there was an admission that the internal, published protocols were not followed following the acceptance of the POC in October. Since the document was deemed irrelevant and Inner City Living has not demonstrated otherwise, we have not been provided a basis upon which we could conclude that the refusal to produce it for the hearing was error. In light of the foregoing, we overrule the second, third, and fourth assignments of error.

{¶21} And finally, in the fifth assignment of error, Inner City Living contends that the trial court erred by not issuing findings of facts and conclusions of law under Civ.R. 52. Even if we assume Civ.R. 52 applied in this case, which we do only for the sake of discussion, the rule requires the party to file a request for the findings of facts or

conclusions of law within seven days of the trial court's order. *GMC v. Joe O'Brien Chevrolet*, 118 Ohio App.3d 470, 479, 693 N.E.2d 317 (10th Dist.1997) ("unless the court is making factual determinations on the basis of additional evidence not before the administrative agency, Civ.R. 52 has no application to such review proceedings"); *Newman v. Indus. Glove Cleaning Co.*, 34 Ohio App.3d 41, 42, 516 N.E.2d 1278 (8th Dist.1986). There was no timely request in this case, and therefore, there can be no error for failing to issue findings of facts or conclusions of law under Civ.R. 52. *Id.* The fifth assignment of error is overruled.

{¶22} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR